## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**WALTER BROWN, individually and on behalf of all others similarly situated,**

**Plaintiff,**

**v.**

**STEAK N SHAKE INC.,**

**Defendant.**

**CIVIL ACTION NO.:**

1:21-cv-04474-LMM

**JURY TRIAL DEMANDED**

## PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT

1.      The case implicates Defendant Steak N Shake Inc.'s ("Defendant") violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of its employees at the federally mandated minimum wage rate for Defendant's failure to pay Plaintiff and all similarly situated workers their earned minimum wages.  Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b).

## SUMMARY OF ACTION

2.      Defendant pays its tipped employees below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA.  Under the tip-credit

1

provision, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3.      However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m).  An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").  That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.      Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp*., 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No.

3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014)("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5.     Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA).  *See* 29 U.S.C. 203(m).

6.     Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation.  *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern.,*

*Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

7.      Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.,* 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendant's motion to dismiss

explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

8.     Defendant violated the FLSA in the following respects:

a. **Violation for failure to inform:** Defendant failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet its minimum wage obligations. In fact, Defendant failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing

to work for Defendant, which reduced his wages below the minimum hourly wage required for tipped employees.

c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, cleaning ledges, cleaning the kitchen, cleaning walls, cleaning window blinds and windows, dusting the ceiling fans, cleaning bathrooms, and washing trays and silverware.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiff was required to perform greater than 20% of his time in performing non-tip producing side work, including, but not limited to, cleaning and stocking the serving line, cleaning booths, cleaning chairs, cleaning menus, cleaning soft drink dispensers and nozzles, cleaning tables, filling and cleaning ketchup and syrup bottles, filling and cleaning salt and pepper shakers, stocking ice, sweeping floors, rolling silverware, and taking out trash.

9.      As a result of these violations, Defendant has lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendant must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10.      This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq.*

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.  In particular, Plaintiff worked for Defendant in this District and was denied the wages he is owed in this District.  Thus, Plaintiff was harmed in this District.

## PARTIES AND PERSONAL JURISDICTION

12.     Plaintiff Walter Brown is an individual who worked for Defendant in Alpharetta, Georgia.  His written consent to this action is attached hereto as Exhibit "A."

13.     The Collective Members are all current and former tipped employees who worked for Defendant for at least one week during the three-year period prior to the filing of this action to the present.

14.     Defendant Steak N Shake Inc. is a foreign corporation doing business in Georgia. Said Defendant may be served with process by serving its registered agent: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092.

15.     Personal jurisdiction exists over Defendant because it has sufficient minimum contacts with the State of Georgia to confer personal jurisdiction. Defendant conducts business throughout Georgia. Furthermore, Defendant

contracted with and employs Georgia residents, has Georgia customers, markets to residents of Georgia, and owns property in Georgia.  Moreover, the violation of the law and the harm committed to Plaintiff occurred in Georgia.

## COVERAGE

16.     At all material times, Defendant has been an employer within the meaning of the FLSA.  29 U.S.C. § 203(d).

17.     At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(s)(1).

18.     At all material times, Defendant has enjoyed yearly gross revenue in excess of $500,000.

19.     At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

## FACTS

20.     Defendant operates a nationwide chain of restaurants under the trade name "Steak N Shake" throughout the U.S.    Defendant operates in Arizona, Alabama, Florida, Missouri, Georgia, Oklahoma, Ohio, Texas, and other states.

21.     The Steak N Shake restaurants are, or were,  full-service restaurants that employ waiters to provide services to customers.

22.    A waiter gathers orders from customers and delivers food and drinks to the customers.  A waiter is paid an hourly wage by Defendant and receives tips from customers.

23.    However, Defendant paid its tipped workers less than the minimum wage under the law.

24.    Defendant attempted to utilize the tip credit to meet its minimum wage obligation to its tipped workers, including the Plaintiff and Collective Members.

25.    Plaintiff worked for Defendant at the Steak N Shake locations in Alpharetta, Georgia.  He worked as a waiter and was paid less than the federal minimum wage.  He worked for Defendant from approximately March 2019 to April 2019.

26.    The tip credit has a harmful effect on workers that threatens the health of the economy.  Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter large corporations operating restaurants advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited January 11, 2021).  The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.

> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work**. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id*.) (emphasis in original)

27.    Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the trip credit to meet its minimum wage obligations.

28.    In this case, Defendant did not satisfy the strict requirements to use the tip credit. Defendant maintained a policy and practice whereby it failed to provide the Plaintiff and the Collective Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

29.    Defendant also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the

employees' tipped occupation. As a result, Plaintiff and the Collective Members were engaged in dual occupations while being compensated at the tip credit rate. While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

30.     These duties include but are not limited to the following: cleaning and stocking the serving line, cleaning booths, cleaning chairs, cleaning menus, cleaning soft drink dispensers and nozzles, cleaning tables, filling and cleaning ketchup and syrup bottles, filling and cleaning salt and pepper shakers, stocking ice, sweeping floors, rolling silverware, and taking out trash, amongst other activities, that were not related to tipped duties.  In fact, Plaintiff had to wash dishes, bus his tables, work as a cashier, and perform host duties – duties of which are normally performed by a worker paid above the minimum wage.

31.     Defendant also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

32.     Specifically, Defendant maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip

producing side work, including, but not limited to cleaning tables, refilling condiments, dusting walls and fans, and setting up tables.

33.     Further, Defendant required Plaintiff and the Collective Members to perform non-tipped producing work prior to the opening of the restaurant and after the restaurant closed.  Indeed, Defendant required the Plaintiff and the Collective Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties.  Likewise, Defendant required the Plaintiff and Collective Members to remain at the restaurant after it had closed for business and there was no opportunity to earn tips, to perform manual labor cleaning duties.  At times, they spent 30 minutes to two hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tipped producing work.

34.     However, Defendant did not pay its tipped employees the full minimum wage rate for this work. The duties that Defendant required Plaintiff and the Collective Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

35.     During Plaintiff's and the Collective Members' employment, checklists were posted in Defendant's restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

36.     When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

37.     Indeed, Defendant did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

38.     Defendant did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendant was capable of doing so.  Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track to the specific tasks for Plaintiff or the Collective Members.

39.     Defendant uses a point-of-sale system to record hours worked by its tipped employees.  Defendant then analyzes the information collected by this system, including the labor costs at each of the restaurants. Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track to the specific tasks for Plaintiff and the Collective Members.

40.     In the point-of-sale system, Defendant can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

41.     However, Defendant did not allow its tipped employees to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

42.     Defendant's managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

43.     Moreover, Defendant violated the FLSA by not even paying the minimum "tipped" hourly rate.  Defendant required its tipped employees to pay for items for their uniform, including shirts, pants, belts, and shoes.  These clothing items were required to perform work for Defendant and were primarily for the benefit and convenience of Defendant. The costs for these items were not reimbursed by Defendant.

44.     Because Defendant paid its tipped employees at the minimum of $2.13 per hour (or the state's respective tipped wage), any week in which a tipped employee was required to pay for work related expenses for Defendant's business,

their compensation fell below the minimum wage rate, thereby negating Defendant's entitlement to claim the tip credit.

45.     In other words, by requiring Plaintiff and the Class Members to pay for these work-related expenses, their hourly rates of pay were reduced by the amount of these uniform costs.  As a result, they were not even paid the minimum hourly rate necessary for Defendant to claim the tip credit.

46.     Because Defendant violated the requirements to claim the tip credit, Defendant lost the right to take a credit toward their minimum wage obligation to Plaintiff and the Collective Members.

47.     As such, Plaintiff and the FLSA Collective Members were not compensated at the federally mandated minimum wage.

48.     Defendant knew or should have known that its policies and practices violate the law, and Defendant has not made a good faith effort to comply with the FLSA. Rather, Defendant acted knowingly, willfully, and/or with reckless disregard of the law carried and continues to carry out an illegal pattern and practice regarding its tipped employees. Defendant's method of paying Plaintiff and the Collective Members was not based on a good faith and reasonable belief that its conduct complied with the law.

## <u>REVISED FIELD OPERATIONS HANDBOOK</u>
## <u>AND NEW DUAL JOBS REGULATION</u>

49.    On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time.  However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference.  *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019). *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019)

50.    Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019.  (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).  After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa).

51.     After   delaying   the   effective   date   of   the   Final   Rule. (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced, "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip    credit."    (https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

52.     Under the proposed rule, if an employee performs non-tip work that exceeds 30 continuous minutes, that worker is no longer performing work that is part of the tipped occupation. (*Id*).

53.     Here, Defendant illegally required Plaintiff and the Collective Members to perform non-tip producing work for an excessive period of time.  That is because Defendant required Plaintiff and the Collective Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business, throughout their shifts, or after they were closed, when the restaurants did not have customers and there was no opportunity to earn tips.  During this time, Defendant paid below the minimum wage rate and forced the Plaintiff and Collective Members to perform non-tip producing duties, as noted above.

54.     Given that Defendant failed to comply with the requirements to take the tip credit, Defendant has lost the ability to claim the tip credit and owe Plaintiff and

the Collective Members pay at the full minimum wage rate per hour for all hours they worked for Defendant.

## COLLECTIVE ACTION ALLEGATIONS

55.     Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendant as a tipped worker for at least one week during the three-year period prior to the commencement of this action to the present.

56.     Plaintiff has actual knowledge, through conversations with his co-workers that a collective of similarly situated workers exists who have been subjected to the same policies of Defendant with respect to the payment of the minimum wage.

57.     The FLSA Collective Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

58.     Like Plaintiff, the FLSA Collective Members were not given proper notice of the tip credit provisions, and performed substantial work that was unrelated to their tip producing duties.

59.     Further, the FLSA Collective Members were, like Plaintiff, not properly informed of Defendant's intent to utilize the tip credit.

60.     Moreover, the FLSA Class Members were also subject to deductions and expenses that dropped their compensation below the minimum wage.

61.     Plaintiff and the FLSA Collective Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

62.     The names and address of the FLSA Collective Members of the are available from Defendant's records.  To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

63.     Although the exact amount of damages may vary among the FLSA Collective Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

64.     As such, the class of similarly situated Collective Members is properly defined as follows:

> **All current and former tipped employees who worked for Defendant for at least one week during the three-year period prior to the filing of this action to the present.**

## CAUSE OF ACTION

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS

### FAILURE TO PAY THE MINIMUM WAGE

65.     Plaintiff incorporates the preceding paragraphs by reference.

66.     This count arises from Defendant's violation of the FLSA in connection with its failure to pay the minimum wages. *See* 29 U.S.C. § 206.

67.     Plaintiff and the Collective Members were paid hourly rates less than the minimum wage while working for Defendant.

68.     Plaintiff and the Collective Members were not exempt from the minimum wage requirements of the FLSA.

69.     Defendant's failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the Collective  Members being paid less than the Federal minimum wage rate.

70.     Defendant's failure to pay the minimum wage to Plaintiff and the Class Members, in violation of the FLSA was willful and not based on a good faith belief that its conduct did not violate the FLSA.  29 U.S.C. § 255(a).

## WAGE DAMAGES SOUGHT

71.     Plaintiff and the Collective Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

72.     Plaintiff and the Collective Members are entitled to liquidated damages.

73.     Plaintiff and the Collective Members are also entitled to recover their attorney's fees and costs, as required by the FLSA.

## JURY DEMAND

74.     Pursuant to his rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

75.     For these reasons, Plaintiff respectfully requests that judgment be entered in his favor awarding his and the Collective Members:

a.  Minimum wage compensation unadulterated by the tip credit;

b.  Liquidated damages;

c.  Reimbursement for all expenses and wages wrongfully withheld;

d.  An order conditionally certifying this matter as a collective action;

e.  An order requiring Defendant to correct its pay practices going forward;

f.  Reasonable attorney's fees, costs, and expenses of this action;

g.  Pre-judgment interest (to the extent liquated damages are not awarded) and post judgment interest; and

h.  Such other and further relief to which Plaintiff and the Collective Members may be entitled, both in law and in equity.

Respectfully submitted,

By: /s/ A. Lee Parks
Georgia Bar No. 563750
lparks@pcwlawfirm.com
John L. Mays
Georgia Bar No. 986574
jmays@pcwlawfirm.com
Parks, Chesin & Walbert, P.C.
75 Fourteenth Street
26th Floor
Atlanta, GA 30309
Telephone: (404) 873-8000
Facsimile: (404) 873-8050

And

Don J. Foty
(will apply for admission pro hac vice)
Hodges & Foty, LLP
dfoty@hftrialfirm.com
Texas Bar No. 24050022
4409 Montrose Blvd, Ste. 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

And

J. Russ Bryant
(will apply for admission pro hac vice)
rbryant@jsyc.com
Robert E. Morelli, III
(will apply for admission pro hac vice)
rmorellie@jsyc.com
Jackson, Shields, Yeiser, Holt, Owen & Bryant
262 German Oak Drive
Memphis, TN 38018
Telephone: (901) 754-8001
Facsimile: (901) 754-8524

And

Anthony J. Lazzaro
Ohio Bar No. 0077962
(will apply for admission pro hac vice)
Alanna Klein Fischer
Ohio Bar No. 0090986
(will apply for admission pro hac vice)
Lori M. Griffin
Ohio Bar No. 0085241
(will apply for admission pro hac vice)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
alanna@lazzarolawfirm.com
lori@lazzarolawfirm.com

Attorneys for Plaintiff and Collective
Members